IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>BRANDON DALE DOSTER,<br><br>            Defendant. | CR 25-15-BLG-SPW<br><br><br>ORDER |

Before the Court is a Motion to Suppress filed by Defendant Brandon Dale Doster. (Doc. 23). Doster seeks to suppress all evidence discovered during a probationary arrest and search of his person, vehicle and residence. (Doc. 24). Doster argues that any evidence discovered must be suppressed because law enforcement lacked the requisite reasonable suspicion that Doster was violating his parole conditions. (*Id.* at 12; Doc. 31 at 5). The United States opposes the motion. (Doc. 27). A suppression hearing was held on August 8, 2025, where Billings Police Department ("BPD") Detective Steve Hallam and Montana State Probation and Parole Officers David Kenat and Lily Ahern testified. (Doc. 38). The Court finds the material facts are not disputed based on the parties' briefing, the officers' reports, body cam videos, and the officers' testimony.

1

Considering the parties' briefing and the testimony and evidence presented at the hearing, the Court denies Doster's motion.

## I. Factual Background

In August 2017, Brandon Doster was convicted of possession of a controlled substance and unauthorized use of a vehicle in Potter County, Texas. (Doc. 27 at 2). On April 4, 2023, his parole was transferred to Montana, where he was assigned to Probation and Parole Officer Lillian Ahern. (*Id.*). Doster agreed to several parole conditions set by the Montana Office of Probation and Parole. (Doc. 27-1). Relevant here, he agreed to the following conditions:

> 5. <u>Illegal Drug Use:</u> I will not possess or use illegal drugs. I will not be in control of or under the influence of illegal drugs, nor will I have in my possession any drug paraphernalia.
>
> 9. <u>Reporting:</u> I will personally report to a Probation/Parole Officer as directed. I will submit monthly reports on forms provided. I will make myself available to Probation/Parole Officers as requested.
>
> 10. <u>Residence:</u> My residence must be approved by a Probation/Parole Officer as directed. I will not change my place of residence without first obtaining written permission from a Probation/Parole Officer. I will make my home open and available for Officers to visit or search upon reasonable suspicion. I will not own dangerous/vicious animals such as guard dogs, use perimeter security doors or any other device that would hinder an Officer, or refuse to open the door to my residence when requested.
>
> 11. <u>Search of Person or Property:</u> Upon reasonable suspicion, as ascertained by a Probation/Parole Officer, my person, vehicle, and/or residence may be searched at any time, day or night, including my place of employment, without a warrant by a Probation/Parole Officer, ISP Officer or Law Enforcement Officer (at the direction of the Probation/Parole/ISP Officer). Any illegal property or contraband will be seized and may be destroyed.

(Doc. 27-1 at 1).

In October 2024, Doster's wife reported to Officer Ahern that Doster had moved out of his approved residence into an apartment complex and was "hanging around people using drugs." (Doc. 27-2 at 4). In a phone conversation with Doster, Officer Ahern confirmed he had moved into a new residence. (*Id.*).

In November 2024, Officer Ahern referred Doster to Enhanced/Transitional Supervision Services ("ETSS") for "one on ones" after he told her that he needed someone to talk to about his marital struggles. (*Id.*). After Doster failed to attend his scheduled ETSS intake appointment on November 22, 2024, ETSS was unable to contact him to reschedule an intake appointment. (*Id.*).

On December 9, 2024, Detective Hallam received a tip from a confidential informant that a man named Brandon was selling fentanyl pills. (Doc. 27-3 at 5). According to the informant, Brandon lived at 224 North 24th Street, Apartment #1, drove a silver or gray car with black rims, and had a crown tattooed on the back of his head. (*Id.*). BPD Street Crime Unit ("SCU") officers investigated the tip and determined that Brandon was Brandon Doster. Officers found that Doster lived at 224 N. 24th St., drove a silver Chevy sedan, and was currently on parole with the State of Montana. (*Id.*).

On December 10, 2024, Detective Hallam contacted Officer Kenat and advised him that Doster was suspected of dealing narcotics. (Doc. 27-3 at 10). In reviewing Doster's parole file, Officer Kenat noted his missed ETSS intake, his

wife's report of potential drug use[1], and his unapproved change of residence. (*Id.*). Officer Kenat relayed this information to Officer Ahern, who requested SCU's assistance in conducting a home check. (*Id.* at 3–4). Officer Kenat informed SCU that Probation and Parole had authorized them to stop and detain Doster, and then search his person, vehicle, and apartment. (*Id.* at 5).

At around 5:10 p.m., Doster arrived at his residence and parked next to his apartment building. Once Doster arrived at the building Detective Hallam approached him and placed him in handcuffs. (*Id.*). Detective Hallam informed Doster that Probation and Parole had requested his detainment and a search of his person, car, and apartment. (*Id.*). Detective Hallam told Doster he was suspected of dealing fentanyl and read him his *Miranda* rights. (Doc. 28-3 at 1:20–25). Before the search was conducted Doster admitted that he had pills in his pocket. (*Id.* at 2:14). Detective Hallam searched Doster's person and found a baggie with 27 suspected fentanyl pills, a digital scale, and $86. (Doc. 27-3 at 5). Officers then searched Doster's car and found a scale. (*Id.*).

At the same time, Officers Beechie and Catlin were searching Doster's apartment. (*Id.* at 10). Inside the apartment, they encountered Jessica Angulo, who consented to a search of her person after being advised of her *Miranda* rights.

---

[1] Based on the offender activity notes submitted by the Government, Doster's wife reported that Doster was associating with people using drugs (Doc. 27-2 at 4), not that he was using drugs himself.

4

Officers found approximately 1.7 grams of methamphetamine, two prescription pills, and drug paraphernalia on her. (*Id.* at 6, 10). Angulo stated that Doster was selling fentanyl and using meth. (*Id.* at 6). Angulo then directed the officers to look inside the drawers on the south wall of the apartment. (*Id.* at 10). SCU officers located multiple empty baggies and one bag with eight suspected fentanyl pills. (*Id.* at 10–11). As they continued their search, the officers found a silver Jennings .22 caliber pistol, a loaded magazine, and a box of Federal .22 caliber bullets. (*Id.* at 11).

After the search, Doster was transported to Yellowstone County Detention Facility and remanded for charges related to the investigation. (*Id.*). Based on the firearm discovery, Doster was charged in the United States District Court of Montana with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 3).

## II.    Legal Standard

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. The Supreme Court has repeatedly affirmed that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Riley v. California*, 573 U.S. 373, 381 (2014)). If law enforcement violates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures, then, under the exclusionary rule, "all evidence

seized as a result" of the unconstitutional actions of law enforcement "must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

### III. Discussion

Doster argues he was unlawfully arrested by Detective Hallam because there was insufficient evidence that he violated any conditions of his parole. (Doc. 24 at 18; Doc. 31 at 5). He further claims that the subsequent searches of his person, vehicle, and home were illegal because officers lacked the reasonable suspicion necessary to conduct a parole search. (Id.). The Government responds that Parole and Probation had reasonable suspicion that Doster violated multiple parole conditions, making both the arrest and searches lawful. (Doc. 27 at 2).

The Court will first determine whether Doster's arrest was lawful. If not, the Court will then assess whether the evidence obtained from the search must be suppressed as fruit of the poisonous tree.

#### A. *Probationary Arrest*

Doster claims he was unlawfully seized for two reasons: (1) Detective Hallam acted without authority because Officer Kenat, not Doster's assigned parole officer (Officer Ahern), ordered the arrest; and (2) there was insufficient evidence that Doster violated his parole conditions. (Doc. 24 at 18; Doc. 31 at 6–9). The

Government counters that Doster's parole conditions allowed any probation or parole officer to authorize an arrest, and that Officer Kenat had sufficient grounds to believe Doster violated those conditions. (Doc. 27 at 9–10)

The Court "look[s] to state law to determine the lawfulness of an arrest by a state officer for a state offense." *United States v. Shephard*, 21 F.3d 933, 936 (9th Cir. 1994). Because Doster was arrested by Montana officers for violating state parole conditions, Montana law governs.

Under Montana law, any probation or parole officer may arrest a parolee without a warrant or may authorize another officer to do so by giving oral authorization, followed within 12 hours by a written statement explaining the basis for the arrest. Mont. Code Ann. § 46-23-1023(2). A person is arrested, as opposed to merely detained, if a reasonable person in the arrestees' shoes would conclude that they are not free to leave even after brief questioning from the officer. *Stevens v. Rose*, 298 F.3d 880, 883 (9th Cir. 2002). Under ordinary circumstances, using handcuffs is not part of a detention unless it is "a reasonable response to legitimate safety concerns on the part of the investigating officers." *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996).

Here, Hallam handcuffed Doster upon arrival at his residence, Mirandized him, and questioned him about suspected drug trafficking. At least three other officers were present as Doster was questioned. (Doc. 28-3 at 3:05). This show of

force, combined with the lack of a clear safety threat, would lead a reasonable person to believe they were under arrest. In addition, the Government does not dispute that Doster was under arrest at this point. (*See* Doc. 27 at 2, 10–14). Importantly, Doster's warrantless arrest was never authorized by a probation and parole officer. Officer Kenat asked SCU to stop and detain Doster, and he testified that he never authorized his arrest. Therefore, Doster's arrest was illegal under § 46-23-1023(2).

### B.  *Parole Search*

Having determined that Detective Hallam illegally arrested Doster, the Court turns to whether the fruits of the probationary search must be suppressed. First, the Court will examine whether the probationary searches of Doster, his vehicle, and his apartment were lawful, and if so, whether the evidence gathered must be suppressed as fruit of the poisonous tree.

#### *1.  Search of Doster's Person, Vehicle, and Apartment*

The Government argues that the warrantless searches were lawful because law enforcement had reasonable grounds to believe Doster violated parole by moving into an unapproved residence and missing an ETSS appointment. (Doc. 27 at 10). In response, Doster contends that neither act was a violation because Officer Ahern implicitly approved his move, as she knew about it for two months, and his ETSS participation was voluntary, rather than a required parole condition. (Doc. 31 at 6–7).

8

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One exception is when law enforcement's "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987).

Supervising probationers and parolees is a law enforcement function involving "special needs." Probationers and parolees "do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [supervision] restrictions.'" *Id.* (quoting *Morrisey v. Brewer*, 408 U.S. 471, 480 (1972)). Restrictions on parolees are meant to assure that parole is a period of rehabilitation, and that the community remains unharmed by the parolee being at large. *Id.* Therefore, supervision "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.*

To this end, a parole search is lawful if conducted under a state law that meets the Fourth Amendment's reasonableness standard. *United States v. Conway*, 122 F.3d 841, 842. State laws that require "reasonable grounds" to support a search satisfy this standard. *Id.*; *Griffin*, 483 U.S. at 870–71. The "reasonable grounds" standard also referred to as the "reasonable suspicion" standard is "substantially less than the probable cause standard required by the Fourth Amendment because of the [parolee's] diminished expectation of privacy." *State v. Moody*, 148 P.3d 662, 665 (Mont. 2006).

Montana courts recognize that requiring a warrant for parole searches would "substantially inhibit the effectiveness" of supervision. *State v. Burke*, 766 P.2d 254, 256 (Mont. 1988). The special needs of the parole and probation system "strongly militate toward the 'reasonable grounds' standard." *Id.* Montana has codified this standard in the Administrative Rules of Montana which permits a search of parolees upon reasonable suspicion that an offender has violated the conditions of their supervision. Admin. R. M. 20.7.1101(6) (2024). "Accordingly, [in Montana,] a probation officer may search a supervisee's person, vehicle, and residence and the supervisee must submit to such search upon the probation officer's reasonable suspicion that the offender has violated the conditions of his supervision." *United States v. Crawford*, CR-19-01-DLC, 2019 WL 2570250 at *5 (D. Mont. June 21, 2019) (citing *State v. Conley*, 415 P.3d 473, 476 (Mont. 2018)). The warrantless

search must be limited in scope to the reasonable grounds that justified the search unless new or additional evidence arises within the lawful scope of the initial search. *State v. Mefford*, 517 P.3d 210, 221 (Mont. 2022).

Here, officers had reasonable grounds to believe Doster violated two parole conditions.

First, his conditions prohibited changing residences without written permission. (Doc. 27-1 at 1). On October 24, 2024, Officer Ahern learned from Doster's wife—and later from Doster himself—that he had moved without obtaining written approval. Officer Ahern testified she could have ordered Doster's arrest at the time but that it was typical to wait for multiple violations before revoking parole. Although the violation occurred two months before the search, no legal authority bars searches based on older parole violations.

Second, Doster's parole conditions required him to report to his parole officer as directed. (*Id.*). Officer Ahern testified that after a discussion with Doster about his marital struggles she recommended the ETSS program and made attendance a requirement of his parole conditions. According to Officer Ahern, she made it clear to Doster that he was required to attend the program. Doster failed to attend his November 22, 2024, ETSS intake appointment, never contacted Officer Ahern regarding his failure to attend, and never rescheduled his ETSS appointment.

Additionally, during the search of Doster's person and apartment, law enforcement developed reasonable grounds to believe Doster was in violation of his illegal drug use condition. Detective Hallam found drugs and paraphernalia when he conducted a search of Doster's person. Further, when officers entered Doster's apartment they found Jessica Angulo sitting on the couch. Angulo consented to a search of her person and officers found approximately 1.7 grams of methamphetamine, two prescription pills, and assorted drug paraphernalia. Angulo told law enforcement that Doster was selling fentanyl pills and using meth. This evidence gave law enforcement, at the minimum, reasonable grounds, to believe Doster violated his "illegal drug use" parole condition. Given this information, the scope of the search was justified by law enforcement's well-founded belief that Doster was selling or using drugs, allowing officers to look inside areas of the apartment that may contain illicit substances.

In sum, law enforcement had reasonable grounds to believe Doster was in violation of his parole. As the search progressed, law enforcement acquired reasonable grounds that Doster was violating his illegal drug use condition, thereby justifying an increased scope of the search. Therefore, the search of his person, vehicle and apartment was lawful under Montana law as a probationary search.

## 2. Evidence Suppression

Next, the Court turns to whether the evidence from the search should be suppressed as fruits of the illegal arrest. Evidence that is the product of an illegal arrest under state law must be suppressed in a federal prosecution. *Henry v. United States*, 361 U.S. 98, 102–03 (1959). The Supreme Court has rejected a simple "but for" causation test, instead requiring courts to examine the "closeness of the link between the illegal arrest and the seizure." *Shephard*, 21 F.3d at 939. In determining whether evidence is tainted because of the illegal arrest, the focus is on the causal connection between the illegality and evidence. *United States v. Chamberlain*, 644 F.2d 1262, 1269 (9th Cir. 1980). The Ninth Circuit in *Shephard* applied the following three factor test to determine whether an illegal arrest warranted suppression of evidence discovered subsequent to the arrest:

> First, we consider the proximity of the illegal arrest with the seizure of the evidence. Second, we consider whether there were independent intervening events that led the police to the evidence. Third, we consider the effect of the suppression on the exclusionary rule's purpose of deterring police misconduct.

21 F.3d at 938–39. Here, the Court finds the second factor to be determinative.

Although the illegal arrest and probationary search of Doster's person, vehicle, and residence occurred in temporal proximity, there were independent grounds justifying the search. As discussed above, law enforcement initially had reasonable grounds to conduct a probationary search of Doster's person, vehicle, and

13

apartment based on his two parole violations. While the discovery of illicit substances on Doster's person after his unlawful arrest provided additional justification, probation officers already had sufficient independent grounds to conduct a search.

Moreover, suppressing the evidence would have a minimal effect on deterring police misconduct. The probationary arrest of Doster was illegal because Officer Kenat only authorized a detention. However, because Probation and Parole had reasonable grounds to believe Doster was in violation of his parole conditions, an authorization of arrest, if it did occur, would have been lawful. Suppressing the evidence in this instance would do little to deter police misconduct.

Therefore, the search of his residence, car, and person was lawful under the Fourth Amendment, and suppression is unwarranted.

///

///

///

///

///

///

///

///

## IV. Conclusion

For these reasons, the Court finds law enforcement did not violate Doster's Fourth Amendment rights when they conducted a parole search of his person, vehicle, and apartment.

IT IS HEREBY ORDERED that Defendant Brandon Dale Doster's Motion to Suppress (Doc. 23) is DENIED.

DATED this 18th day of August, 2025.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge